IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause Nos. CR 07-13-H-DWM |
| | CV 12-07-H-DWM |
| Plaintiff/Respondent, | |
| | CR 08-14-M-DWM |
| vs. | CV 12-10-M-DWM |
| JOHN ERIC CARPEGNA, | |
| Defendant/Movant. | |

_____

**OPINION AND ORDER**

These two cases come before the Court on Defendant/Movant Carpegna's
motions to vacate, set aside, or correct the sentences under 28 U.S.C. § 2255.
Carpegna filed his § 2255 motions *pro se* but is now represented by Dan Donovan.

Based on review of the controlling case law and all of the documents filed in
each of these matters, Carpegna is entitled to be resentenced in *Carpegna I.* His other
claims are denied.

**I. Background**

**A. *Carpegna I*, No. CR 07-13-H**

On June 22, 2007, a grand jury indicted Carpegna on one count of receipt of

1

child pornography, a violation of 18 U.S.C. § 2252A(a)(2) (Count 1); one count of possession of child pornography, a violation of 18 U.S.C. § 2252A(a)(5)(B) (Count 2); and a forfeiture count involving an HP laptop computer. The conduct was alleged to have occurred "from an unknown date in 2005 through March 7, 2006, at Whitehall," Montana. Indictment (doc. 1) at 2. Michael Donahoe was appointed to represent Carpegna. Order (doc. 6).

On September 27, 2007, Carpegna entered an "open" plea of guilty to all counts without a plea agreement. He reserved the right to appeal denial of his motion to suppress. Minutes (doc. 28); Notice of Reservation (doc. 29). On January 18, 2008, he was sentenced to serve 97 months on Counts 1 and 2, concurrent, to be followed by a life term of supervised release. Judgment (doc. 39) at 2-3.

On appeal, Carpegna's conviction was affirmed. Based on *United States v. Hector*, 577 F.3d 1099, 1104 (9th Cir. 2009), and *United States v. Davenport*, 519 F.3d 940, 948 (9th Cir. 2008), the case was remanded. Mem. at 2-3, *United States v. Carpegna*, No. 08-30024 (9th Cir. Sep. 22, 2009) (unpublished mem. disp.) (doc. 52). Carpegna's conviction on Count 2 was vacated and dismissed, and he was resentenced to serve 97 months and a life term of supervised release on Count 1. Order (doc. 55); Am. Judgment (doc. 59) at 1-3. He appealed again, but the sentence was affirmed. Mem. at 1-2, *United States v. Carpegna*, No. 10-30053 (9th Cir. Jan.

21, 2011) (unpublished mem. disp.) (doc. 66).

## B.  *Carpegna II*, No. CR 08-14-M

Five weeks after his original sentencing in *Carpegna I*, on February 25, 2008, Carpegna was again indicted on one count of receipt of child pornography, a violation of 18 U.S.C. § 2252A(a)(2) (Count 1); one count of possession of child pornography, a violation of 18 U.S.C. § 2252A(a)(5)(B) (Count 2); and a forfeiture count involving an Acer notebook computer.  Indictment (doc. 1) at 2.  The conduct was alleged to have occurred "from approximately November 2006 through July 12, 2007, at Missoula," Montana.  Michael Donahoe was again appointed to represent Carpegna.  Order (doc. 5).

This time, Carpegna reached a plea agreement with the United States.  He agreed to plead guilty to the possession count, to undergo a sex-offender evaluation, and to complete any recommended treatment.  The United States agreed to dismiss Count 1.  Both parties remained "free to argue for any reasonable sentence."  Plea Agreement (doc. 20) at 2 ¶ 4, 8-9 ¶ 13, 10 ¶ 15.

On October 10, 2008, Carpegna was sentenced to serve a total of 121 months, with 96 of those months to run consecutive to the sentence in *Carpegna I*, and to another life term of supervised release.  Judgment (doc. 34) at 2-3.  He appealed, but his conviction and sentence were affirmed.  Mem. at 2-3, *Carpegna*, No. 08-30024

(doc. 43).

## C. Claims for Relief Under 28 U.S.C. § 2255

Carpegna filed his § 2255 motions pro se. All claims aimed at Carpegna's conviction or sentence in *Carpegna I* were denied. Two of his claims, made only in connection with *Carpegna II*, required an Answer. *See* Order Denying Some Claims and Requiring Answer (docs. 72, 49) at 6-10.

Although the motion in *Carpegna II* was likely time-barred, the United States waived that defense by failing to raise it in the Answer. *See* Order Requiring Answer at 10 ¶ 2; Answer (doc. 51) at 2-3.

After the United States filed its Answer, counsel was appointed to represent Carpegna. Counsel moved to extend to *Carpegna I* the claims and terms of the Order requiring an Answer in *Carpegna II*. *See* Unopposed Mot. to Expand and Extend Orders (doc. 80) at 1-6. Because the United States did not oppose the motion, it was granted, and the § 2255 motion in *Carpegna I* was reopened.

Initially, it appeared the issue concerned the manner in which images were counted for purposes of the guideline enhancement under U.S.S.G. § 2G2.2(b)(7). The issue seemed to be one the parties would be able to resolve. Although CR 07-13-H was reopened, proceedings were stayed in that case pending resolution of CR 08-14-M.

The parties were unable to reach a resolution. On February 12, 2013, they were ordered to file a Joint Brief, explaining what claims were at issue and each party's position on each claim. They complied on March 11, 2013.

The following claims need to be resolved. Their phrasing clarifies that both the validity of the guilty pleas and the correctness of the sentences are at issue. Each claim applies to both *Carpegna I* and *Carpegna II*:[1]

1. Trial counsel was ineffective because he should not have advised Carpegna to plead guilty.

2. Carpegna did not knowingly possess any child pornography.

3. Trial counsel was ineffective because he should have engaged a computer expert to cross-examine the government's expert at sentencing.

## II. Analysis

Claims of ineffective assistance of counsel are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). Carpegna must show both that counsel's performance fell below an objective standard of reasonableness, *id.* at 687-88, and that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

---

[1] *See* Joint Status Report (doc. 66) at 2 ¶ I(A) para. 4; *id.* at 3 ¶ I(B) para. 4. The United States does not appear to understand either the nature of the challenge to the guilty pleas, *see infra* n.5, or that there are sentencing issues as well, *see id.* at 11-14 (not addressing sentencing issues).

5

## A. Guilty Pleas

Carpegna may obtain relief if he can show that his guilty pleas were not voluntary because they were based on erroneous advice from counsel. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). He must also show prejudice by showing that, but for counsel's errors, he would not have pled guilty and would have proceeded to trial. *Hill v. Lockhart*, 474 U.S. 52, 56-59 (1985).

Carpegna insists that counsel's advice was wrong because the facts Carpegna admitted and the other evidence in the case, even if true, do not constitute knowing possession or receipt of child pornography. Consequently, if he shows that counsel's advice was wrong, the prejudice prong will be met.

### 1. *Carpegna I*

The conduct underlying *Carpegna I* occurred from 2005 through March 7, 2006. Although Carpegna was convicted of both receipt and possession, his conviction for possession was vacated. He stands convicted only of receipt of child pornography, that is, of:

> knowingly receiv[ing] . . . any child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer; or . . . any material that contains child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer.

18 U.S.C. § 2252A(a)(2) (eff. April 30, 2003, to July 26, 2006).

6

Carpegna agreed the United States could prove he "searched the internet using search terms that included where to buy child porn, pre-teen sex and Lolita sex, among others." Change of Plea Tr. (doc. 47) at 34:15-16; *see also id.* at 35:1-6; Weg Report (doc. 80-1) at 6 para. 6. He also admitted using the HP laptop computer to search for child pornography. While he said he did not download, print, or save any images, *id.* at 32:15-33:1, he did say he deleted them. When he was asked what he meant by that, he said, "I looked at it and then after I seen it, I deleted them, hit delete," *id.* at 33:1-4, then "just turned the computer off," *id.* at 33:23-24.

Carpegna argues that this conduct is insufficient proof that he knowingly possessed child pornography. Further, since exertion of dominion and control is required to show receipt as well as possession, he argues that the conduct he described also is not sufficient to constitute receipt of child pornography. In fact, he argues that viewing child pornography online was not a crime at all until October 8, 2008, when new legislation went into effect.[2] Joint Br. (doc. 91) at 5-6. He is

---

[2] *See* Effective Child Pornography Prosecution Act of 2007, Pub. L. No. 110-358, §§ 101-103, 122 Stat. 4001 (Oct. 8, 2008). The Act added to many of the applicable statutes, including the ones at issue in Carpegna's cases, the phrase "using any means or facility of interstate or foreign commerce." *Id.* § 103(a). *Cf. United States v. Wright*, 625 F.3d 583, 598-99 (9th Cir. 2010) (holding that "at the time of Wright's offense, section 2252A(a)(1) required the government to prove that the child pornography images actually crossed state lines"); *see also United States v. Flyer*, 633 F.3d 911, 917-18 & n.4 (9th Cir. 2011). Carpegna's meritless *pro se* challenge to the jurisdictional element was not based on the legislation enacted in 2008. Carpegna's remaining claims question his knowing possession. But what constituted knowing possession of child pornography before the 2007 Act still constitutes it after the 2007 Act.

mistaken.

Carpegna relies principally on *United States v. Flyer*, 633 F.3d 911 (9th Cir. 2011). That case establishes that the mere presence of images of child pornography in "unallocated space" on a computer hard drive, in and of itself, does not suffice to prove knowing possession of child pornography:

> Unallocated space is space on a hard drive that contains deleted data, usually emptied from the operating system's trash or recycle bin folder, that cannot be seen or accessed by the user without the use of forensic software. Such space is available to be written over to store new information. Even if retrieved, all that can be known about a file in unallocated space (in addition to its contents) is that it once existed on the computer's hard drive. All other attributes – including when the file was created, accessed, or deleted by the user – cannot be recovered.

*Id.* at 918. The nature of unallocated space is important because using a computer to access the internet can result in the deposit of images constituting child pornography to the internet cache file on the hard drive, even if the user is not aware of the images. For instance, the criminal images may appear among many other non-criminal images on a website hosting adult pornography, then be downloaded automatically by the computer's operating system on the first occasion the webpage is displayed. For this reason, images that exist only in internet cache do not suffice, in and of themselves, to support a finding of knowing possession. *United States v. Kuchinski*, 469 F.3d 853, 863 (9th Cir. 2006). And because images in unallocated space may be no more

8

than old internet cache, they do not suffice either.

But it is important to read with care the charge, the evidence, and the prosecution's concessions in *Flyer*. The case does not say that a defendant is not guilty of knowing possession of child pornography if the only identified images of child pornography are found in unallocated space or internet cache. Flyer was charged with possessing child pornography "on or about April 13, 2004," *id.* at 915, on his Gateway computer. April 13, 2004, was the date on which the Gateway was seized pursuant to a warrant. Flyer also had an Apple laptop. LimeWire was installed on the Apple but not on the Gateway. The Gateway was described only as holding images, and those images were located only in unallocated space on the hard drive. *Id.* at 914, 915. The court held that this evidence did not establish knowing possession:

> The government concedes that it presented no evidence that Flyer knew of the presence of the files on the unallocated space of his Gateway computer's hard drive. The government also concedes it presented no evidence that Flyer had the forensic software required to see or access the files. . . . [T]here is no evidence here that Flyer had *accessed*, enlarged, or manipulated any of the charged images, and he made no admission that he had *viewed* the charged images *on or near the time alleged in the indictment*. . . .
>
> [D]eletion of an image alone does not support a conviction for knowing possession of child pornography *on or about a certain date*

within the meaning of § 2252(a)(4)(B).[3] No evidence indicated that *on or about April 13, 2004*, Flyer could recover or view any of the charged images in unallocated space or that he even knew of their presence there.

*Id.* at 919, 920 (emphases added).

Similarly, in *United States v. Navrestad*, 66 M.J. 262 (C.A.A.F. 2008), the accused employed a public computer at an internet café on an army base in Germany. During chat sessions with "Adam," purportedly a boy but in reality a police officer, Navrestad responded to "a specific request for pictures of 'guys 10-13.'"

In response to "Adam's" request, Navrestad sought out child pornography on the Internet using the Internet café computer and located links to several Yahoo! Briefcases that contained child pornography. While at the Internet café, Navrestad opened and viewed the Briefcases to confirm the contents and then sent a hyperlink to one of the Briefcases that contained child pornography to "Adam."

*Id.* at 264. The court held:

Navrestad viewed the images in the Yahoo! Briefcase, but his actions with the images went no further. He *could not* access the computer's hard drive where the Briefcase images were automatically saved *nor could he* download the images to a portable storage device. There is no evidence that he e-mailed, printed or purchased copies of the images or that he was even aware that he could take any of these actions. As to what Navrestad might have been able to do with the images,

---

[3] Carpegna was convicted under § 2252A(a)(2) and (a)(5)(B), not § 2252(a)(4)(B), but the differences are not material in the present context. It is interesting to note that the *Flyer* court stated the United States had to show that Flyer possessed the images on the Gateway "with intent to view" them. *See Flyer*, 633 F.3d at 918 (purporting to quote statute). In fact, at the time of Flyer's charged conduct – April 13, 2004 – the statute did not contain the phrase "with intent to view." *See* 18 U.S.C. § 2252(a)(4)(B) (eff. April 30, 2003, to July 26, 2006). But it does not appear the presence or absence of "intent to view" played any role in the court's decision.

"possession" is not based upon unknown contingencies but "must be knowing and conscious."

*Id.* at 267 (emphases added). In sum, *Navrestad* is truly a "viewing only" case.

Based on the "other relevant evidence," *see* Order Requiring Answer at 8, Carpegna's case is different from Navrestad's and Flyer's. Carpegna owned the laptop on which illegal images were found. He knew enough about the presence of the images on the laptop to "hit delete" after he was finished viewing them. Although he did not choose to print the images or download them to the laptop or to a portable storage device, there was evidence that he, unlike Navrestad, could do so and knew he could: a Sony 700 MB recordable compact disc was seized in the search. Return (doc. 15-4) at 3. Further, instead of alleging Carpegna possessed the images on a specific day, as the prosecution did in *Flyer*, the prosecution here alleged a course of conduct involving Carpegna's use of search terms such as "preteen sex" and "where to buy child porn" to locate and view child pornography intermittently over a long period of time. Unlike Flyer, Carpegna used those search terms on the HP laptop, the same computer on which images of child pornography were found. Carpegna owned a desktop computer until June or July 2005, but he destroyed it after his then-girlfriend found websites featuring child pornography in its internet history.[4]

---

[4] Following Carpegna's destruction of the desktop, in November or December 2005, his girlfriend noticed Carpegna was still receiving bills for internet service. *See* Suppression Hr'g Tr.

Carpegna said he was not "computer-literate," but when Agent Weg found only 370 index records indicating website visits, he suspected that the user "deleted his browsing records with some regularity." And he confirmed that suspicion by extracting 7,200 more potential index records from deleted data. Weg Report (doc. 80-1) at 6 paras. 3-5. Agent Weg noted that the operating system was "last installed" on the hard drive in 2005 and that the thumbcache file was created on December 4, 2005; both dates fell within the frame of the indictment. Weg Report at 5 para. 1. Even in the proceedings on the § 2255 motions, Carpegna has never claimed that all the images on the laptop were recorded there by someone else, or before 2005, or after March 7, 2006.

Carpegna's case, therefore, is controlled not by *Flyer* or *Navrestad* but by *United States v. Romm*, 455 F.3d 990 (9th Cir. 2006):

> In the electronic context, a person can receive and possess child pornography without downloading it, if he or she seeks it out and exercises dominion and control over it. Here, we hold Romm exercised dominion and control over the images in his cache by enlarging them on his screen and saving them there for five minutes before deleting them. While the images were displayed on Romm's screen and simultaneously

(doc. 46) at 12:2-23, 13:20-14:10. In mid-January 2006, she was with him in a Staples store in Butte while he was contemplating the purchase of another computer. This information, including the destruction of the desktop, was set forth in the affidavit in support of the application for the search warrant. *See* Kluesner Aff. (doc. 15-2) at 3 ¶ 5. The application was granted, and the warrant authorized a search for computers as well as electronic storage media. *See* Warrant (doc. 15-3), Suppression Hr'g Tr. at 38:10-23. In executing the warrant, officers found the HP laptop and the Sony recordable CD. Return (doc. 15-4) at 3.

stored to his laptop's hard drive, he had the ability to copy, print, or email the images to others.

> . . . Romm repeatedly sought out child pornography over the internet. When he found images he "liked," he would "view them, save them to his computer, look at them for about five minutes [ ] and then delete them." . . . While the images were displayed on screen and simultaneously stored to his cache, Romm *could* print them, email them, or save them as copies elsewhere. Romm *could* destroy the copy of the images that his browser stored to his cache. And according to detective Luckie, Romm did just that, either manually, or by instructing his browser to do so. Forensic evidence showed that Romm had enlarged several thumbnail images for better viewing. In short, given the indicia that Romm exercised control over the images in his cache, there was sufficient evidence for the jury to find that Romm committed the act of knowing possession.

*Id.* at 998, 1000-01 (internal quotation marks and brackets in original). Carpegna's conduct was almost identical. Further, even after *Flyer*, the Court of Appeals did not retreat from *Romm*. *See United States v. Zarn*, 365 Fed. Appx. 838, 838-39 (9th Cir. 2010) (unpublished mem. disp.).

Carpegna's sworn testimony at the change of plea hearing confirms the picture presented by the evidence. But even without those statements, a reasonable attorney would have concluded the prosecution had sufficient evidence to support a reasonable fact-finder's determination, beyond reasonable doubt, that Carpegna both possessed and received images constituting child pornography on the HP laptop between 2005 and March 7, 2006. As in *Romm*, 455 F.3d at 1000, Carpegna knew "the unlawful images [we]re stored on . . . tangible material in his possession," i.e., his computer.

13

He learned from the example of the destroyed desktop's betrayal of his internet history. That is why he "hit delete," and that is why Agent Weg found evidence of "wiped" internet history on the HP laptop. Further, Carpegna used search terms that any reasonable juror would have found highly incriminating. Weg Report at 6 para. 6. Had the evidence been presented to a jury, there is no reasonable probability Carpegna would have been acquitted. *Hill*, 474 U.S. at 59-60.

Counsel's advice regarding Carpegna's plea was competent, and the plea was valid. *Strickland*, 466 U.S. at 687-88; *Henderson*, 411 U.S. at 267.

### 2. *Carpegna II*

Carpegna's conduct in *Carpegna I* came to light following a report in March 2006 by his ex-girlfriend that he molested her four-year-old daughter. Based on that report, he was arrested, and his HP laptop was seized pursuant to a search warrant. He was charged in state court with sexual assault and released pending trial.

The events underlying *Carpegna II* began in November 2006, as officials with Immigration and Customs Enforcement were investigating a criminal organization operating several websites providing child pornography. Carpegna was identified as a subscriber to some of those websites. Obtaining and executing a search warrant at Carpegna's new residence in Missoula in July 2007, agents seized an Acer notebook computer. Carpegna admitted he was its first and only user. When the notebook's

hard drive was analyzed, "approximately 235 images and eight videos of child pornography" were found. Change of Plea Tr. (doc. 39) at 20:15-21:8. On February 25, 2008, a grand jury returned an indictment in *Carpegna II*. Carpegna admitted the "computer contained multiple images of child pornography" and he was "aware of that and knew that," yet kept the computer in his possession. *Id.* at 22:9-20.

For the same reasons set forth above, these facts show knowing possession of child pornography. Regardless of precisely where on the Acer computer the images were residing when its hard drive was analyzed, there was and is no reason to doubt that Carpegna sought out child pornography online intermittently between November 2006 and July 2007, looked at it, knew that it stayed on his computer one way or another for some period of time, and kept the computer just the same. Again, counsel's advice regarding Carpegna's plea was competent. The plea was valid. *Strickland*, 466 U.S. at 687-88; *Henderson*, 411 U.S. at 267.

### 3. Conclusion

Carpegna's first and second claims are denied as to both *Carpegna I* and *Carpegna II*.

### B. Sentencing

Evidence can be sufficient to support a conviction for knowing receipt or possession of child pornography even when the prosecution does not recover a single

image.[5]  But sentencing is different.  If the United States seeks an enhancement under

U.S.S.G. § 2G2.2(b)(7), it has the burden of proving, by at least a preponderance of

the evidence, that the offense "involved" a certain number of images.  *See United*

*States v. Allen*, 434 F.3d 1166, 1173 (9th Cir. 2006) (quoting *United States v.*

*Howard*, 894 F.2d 1085, 1089-90 (9th Cir. 1990)) (internal quotation marks omitted).

Other ways of proving the number might be available in other cases, but in this case,

the number came from Agent Weg's copying and analysis of the hard drives of the

HP laptop and the Acer notebook.

### 1. Application of *Kuchinski*

In *United States v. Kuchinski*, 469 F.3d 853 (9th Cir. 2006), the defendant

admitted downloading 110 images of child pornography.[6]  At sentencing, he was held

responsible for at least 13,904 more images, all residing in his internet cache files.

The Circuit said it did not doubt Kuchinski had "accessed the web page that had those

---

[5]  The affirmative defense, requiring a defendant to show that he possessed "less than three" images and promptly destroyed or reported them, *see* 18 U.S.C. § 2242A(d), is not at issue here.

[6]  Although other cases discuss *Kuchinski* as an "unwitting possession" scenario, it is important to remember that the defendant there went looking for child pornography, he found it, and he downloaded it – 110 times.  (His "grasp" of the images in internet cache may have been "valetudinarian," but it seems strange to characterize his ignorance as "abysmal."  *Id.* at 863.  He knew what he was doing.)  The defendant did not even try to elude responsibility for the 110 downloaded images.  The question was how many additional images he was responsible for.  The 13,904 images in internet cache could have appeared in response to the same search terms, on the same website, and at the same time as the 110 images Kuchinski downloaded.  He could even have stared at every single one of those 13,904 images for minutes at a time.  But there was no evidence of such activity to support the five-level enhancement under U.S.S.G. § 2G2.2(b)(7).

images somewhere upon it." *Id.* at 862. But the court was troubled by the fact that nearly 14,000 additional images were counted against him at sentencing with no regard for "whether he actually *saw* the images." *Id.* (emphasis added). As the court explained, a problem exists because an image may wind up in internet cache just by being displayed on a website accessed by the defendant – even if the defendant does not click on the image, enlarge it, look at it, or otherwise do anything with it. As a user is viewing a webpage, the computer's operating system is generally automatically downloading the page to internet cache, so it can be displayed more quickly from the hard drive if the user returns to that page in the reasonably near future. It does not make sense to count against the user images that his computer downloaded to internet cache without his awareness. For that reason, the *Kuchinski* court held that "it was not proper to consider the cache file images when Kuchinski's offense level for Guideline purposes was calculated."[7] *Kuchinski*, 469 F.3d at 863; *see also* Holmes Report (doc. 60-1) at 3-4 (giving examples of how a user might trigger the delivery of many images to internet cache or system files despite never exercising control over them or even seeing them). "To do so turns abysmal ignorance into knowledge and a less than valetudinarian grasp into dominion and

---

[7] The Court noted that no argument had been made as to "relevant conduct." *Kuchinski*, 469 F.3d at 862 n.23.

control." *Kuchinski*, 469 F.3d at 863 (Fernandez, J.).

Without citing authority, the United States claims that "receipt [of child pornography] . . . is easy to prove for internet cache." Joint Br. at 12. The problem is that the issue, easy or hard, is not receipt but knowledge. The whole rationale of *Kuchinski* is that a computer user can receive child pornography in internet cache without being aware of it. Additionally, "[g]enerally, federal statutes criminalizing the receipt of contraband require a 'knowing acceptance and taking of possession' of the prohibited item." *Romm*, 455 F.3d at 1001; *see also United States v. Dobbs*, 629 F.3d 1199, 1204-09 (10th Cir. 2011) (reversing conviction for receipt where prosecution failed to prove images in cache were placed there shortly after use of search terms seeking child pornography); *United States v. Miller*, 527 F.3d 54, 63-64 (3d Cir. 2008) (explaining how one could knowingly possess child pornography that originated online without having knowingly received it). *Kuchinski*, moreover, interprets U.S.S.G. § 2G2.2, which applies in both receipt and possession cases.

*Kuchinski* applies to both Carpegna's possession conviction in *Carpegna II* and to his receipt conviction in *Carpegna I*.

## 2. *Carpegna I*

Carpegna received a 3-level enhancement because his hard drive contained between 150 and 300 images constituting child pornography. All of these images

were found in a *Thumbs.db* file. As opposed to *Thumbcache*, which was involved only in *Carpegna II*, a *Thumbs.db* file necessarily corresponds to a particular file on the system that is *not* internet cache. As Agent Weg explained, in *Carpegna I*:

> [C]hild pornography thumbnails were in the *Thumbs.db* file that was in the user's *My Pictures* folder. *My Pictures* is a folder that is created by the system and is the default location for graphics that a user downloads. It is reasonable to believe that present or former graphics in *My Pictures*, as evidenced by a *Thumbs.db* file, were downloaded to that folder. . . . Weg would be surprised if a user did not know that 44 child pornography images were in the *My Pictures* folder.

Weg Report Supp. 1 (doc. 88-1) at 2 para. 3.

Carpegna has reviewed Weg's report. He does not suggest Weg is wrong about the two salient facts: (1) a *Thumbs.db* file in the Windows XP Home Edition operating system necessarily corresponds to a particular file on the system that is *not* merely internet cache, and (2) an image probably does not wind up in *My Pictures* unless it is downloaded by the user, that is, not automatically by background functions of the operating system. Joint Br. at 3-5. Since "probably" is the burden of proof for the enhancement, it makes sense to count against the defendant the images in *My Pictures*.

By Weg's own account, however, Carpegna had 44 images in the *My Pictures* folder. That is significantly less than the 311 or 250 that were used against him at

sentencing.[8]  There is a reasonable probability that the 3-level enhancement should instead have been a 2-level enhancement.  U.S.S.G. § 2G2.2(b)(7)(A), (B).  With the 3-level increase, Carpegna's advisory guideline range was 78-97 months.  With a 2-level increase, it would have been 70-87 months.  Carpegna was sentenced to 97 months, ten months above the high end of the alternative range.  He succeeds in showing prejudice under *Strickland*.

Further, Agent Weg's supplemental report, with the significantly lower figure of 44 images, was created at the instance of the United States and new counsel for Carpegna when Agent Weg was asked to take the ruling in *Kuchinski* into account. The ruling should have been taken into account initially.  There was no strategic reason not to question whether the number of images counted included any in internet cache or unallocated space or, failing that, to seek expert assistance to determine the number of images that were countable under *Kuchinski*.  Carpegna is entitled to be resentenced in *Carpegna I*.

### 3. *Carpegna II*

In *Carpegna II*, Carpegna had 8 videos.  Presentence Report ¶ 12; Addendum at 1.  Eight videos constitute 600 images, U.S.S.G. § 2G2.2 Application Note 4(B)(ii),

---

[8]  *Compare Carpegna I* Presentence Report ¶ 16 (stating that there were 311 "thumb nail images"), *with Carpegna II* Presentence Report ¶ 41 (stating that of "311 thumb nail images depicting child [sic] pornography . . . only 250 are classified as child pornography").

which corresponds to a 5-level enhancement, U.S.S.G. § 2G2.2(b)(7)(D). That is the same enhancement that was applied at sentencing. Presentence Report ¶ 29.

Neither party has suggested that a *video* may inadvertently wind up on a user's computer independently of any act of selection by the user. The reasons images may be placed in internet cache without the user's knowledge do not logically extend to video. The purpose of the automatic download is adequately served by downloading one still image rather than a video. In fact, automatically downloading video would slow the display of a webpage in the first place, and it would take up more space more quickly in internet cache, so the computer could store fewer webpages there. *Cf. United States v. Winkler*, 639 F.3d 692, 696-99 (5th Cir. 2011) (distinguishing cases involving still images in internet cache because video is routed to internet cache only after user selects video for viewing or downloading).

There is no support for a finding that anything other than a 5-level enhancement would have applied even if *Kuchinski* had been scrupulously observed. The overall advisory guideline calculation would not change. Neither, of course, would the ten-year mandatory minimum sentence. 18 U.S.C. § 2252A(b)(2). The parties contested only one issue at sentencing – to what extent the sentence in *Carpegna II* should run consecutively to the sentence in *Carpegna I*. Because none of the underlying factors taken into account under 18 U.S.C. § 3553(a) would have

been different, there is no reasonable probability of a different result if counsel had challenged the number of images at the original sentencing. Carpegna fails to show prejudice under *Strickland*. His claim regarding the sentence in *Carpegna II* is denied.

### III. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Can I just say again ho

Some claims were denied in the Order Requiring Answer (docs. 72, 49). Carpegna's claims regarding "virtual children" and jurisdiction were frivolous. Neither of his convictions and neither of his sentences was predicated on "virtual children," so there was no associated jurisdictional issue. Had Carpegna sought a downward departure under U.S.S.G. § 5K2.0 based on his susceptibility to abuse in

prison, the motion would have been denied. No COA is warranted as to these claims.

Although this Order distinguishes between facts necessary to establish the crime and facts necessary to establish sentencing enhancements, there is no Ninth Circuit decision drawing the distinction on one fact pattern. A COA is granted as to Carpegna's claims that his guilty pleas in *Carpegna I* and *Carpegna II* were invalid because he did not knowingly possess child pornography. A COA is not warranted as to the sentence in *Carpegna II* as there is no doubt about his receipt and possession of 8 videos and, therefore, 600 images.

Accordingly, IT IS HEREBY ORDERED as follows:

1. Carpegna's claims regarding his guilty pleas are DENIED.

2. The claim against the sentence in *Carpegna II* is DENIED.

3. All other claims having been denied, a certificate of appealability is DENIED as to all claims except Carpegna's challenges to his guilty pleas in both *Carpegna I* and *Carpegna II*.

4. Carpegna's claim against the sentence in *Carpegna I* is GRANTED. The Amended Judgment entered on February 12, 2010 (doc. 59), is VACATED.

5. On the date a new criminal judgment is entered, the Clerk of Court shall enter judgment, by separate document:

a.   in Cause No. CV 12-07-H-DWM, in favor of Carpegna and against the United States as to the claim of ineffective assistance in connection with the sentence, and;

b.   in Cause No. CV 12-10-M-DWM, in favor of the United States and against Carpegna on all claims.

DATED this ___14___ day of August, 2013.

_____
Donald W. Molloy
United States District Court